## ALLINGTON et al. v. FOREST BOX & LUMBER CO., Inc.

District Court, E. D. New York. March 23, 1928.

1. **Patents ⬡⇒26(2)—Combination and arrangement of old elements, producing a new and beneficial result, constitutes invention.**

Even were all the elements of a patent old and well known, the combination and arrangement of them, producing a new and beneficial result, never attained before, constitutes invention and not mere aggregation.

2. **Patents ⬡⇒289(2), 312(1⅝)—Defendant has burden of proving laches; mere knowledge of infringement two months before action is not sufficient.**

There being no proof of any knowledge by plaintiffs in patent infringement action till two months before filing complaint that defendant's structures infringed, laches, the burden of establishing of which is on defendant, is not shown.

3. **Patents ⬡⇒328—989,939, claims 3, 4, 6, 10, 11, 18, 19, for dust collector, held not anticipated, valid, and infringed.**

Allington patent No. 989,939, claims 3, 4, 6, 10, 11, 18, 19, for dust collector, *held* not anticipated, valid, and infringed.

In Equity. Patent infringement action by William E. Allington and another against the Forest Box & Lumber Company, Inc. Decree for plaintiffs.

Fish, Richardson & Neave and Henry R. Ashton, all of New York City (Ross O. Hinkle, of Chicago, Ill., of counsel), for plaintiffs.

Allan D. Emil, of New York City (Morris Kirschstein, of New York City, of counsel), for defendant.

CAMPBELL, District Judge. This is an action in equity for the alleged infringement of patent No. 989,939, issued to the plaintiff William E. Allington, for dust collector, dated April 18, 1911, on application filed May 7, 1906.

The other plaintiff, Allington & Curtis Manufacturing Company, is an exclusive licensee.

The defendant, Forest Box & Lumber Company, Inc., of Brooklyn, N. Y., is a user of alleged infringing dust collectors sold to it and erected for it by Meadon Blower & Pipe Company, Inc.

The defendant interposed the defenses of invalidity and noninfringement, but the proven and admitted inaccuracies of some of the testimony offered on behalf of the defendant, with reference to the interior of the collectors used by the defendant, leave the defendant with no substantial evidence to successfully controvert the plaintiffs' claim of infringement.

The invention relates to dust collectors, more particularly to dust collectors of the centrifugal type.

In large factories, such as woodworking factories, it has long been known that the best way to dispose of the residue material that results from the use of power-driven saws, lathes, and planers, is to take it from the individual machines and convey or transport it to some point where it can be stored or burned in the furnace.

This may be best accomplished by streams of air flowing at high velocity through metal pipes of a dust-collecting or a part of a dust-collecting system, to the machine called a dust collector.

The machine of the patent in suit is made just as small at the top as it can be made, so that the dust-laden air may enter as near the axis of rotation as possible, to cause a movement of the dust-laden air within the collector in a cylindrical spiral downward of practically the same diameter all the way down from the top of the machine where the dust-laden air enters to the deflecting zone which stops the rotation of the air.

During this downward cylindrical spiral course, all of the dust and heavier particles which are separable from the air by cen-

trifugal force are thrown into the outer current of air which occupies the enlarged lower part of the body of the machine; and this air rotates at a considerably lower velocity than the air of the cylindrical spiral, because it gets its rotary motion from this central major current of air; and of course slips and travels at a lower velocity, and enables the material collected to be more easily delivered from the bottom of the collector.

The upper portion of the tapering part of the collector tapers downwards and outwards from the small upper top, which is only large enough to permit of sufficient outlet of air, for the final outlet of air at the axis, and the width of the narrow, high inlet connection which delivers the air into the collector.

After the dust has been thrown out of the cylindrical spiral, traveling into the outer zone, it travels downward in spiral lines through the main upper part of the collector massed against the inner wall, and continues to travel in spiral lines massed against the inner surface of the inverted conoidal bottom of the collector, and is delivered through the small opening at the bottom of the cone part of the collector.

The effect of delivering the air through the upper part of the collector in a cylindrical spiral is that the air is never required to travel against centrifugal force or overcome any centrifugal resistance to get across to the downwardly flaring stack which leads it out into the atmosphere, because, before the air has to turn toward the center of axis of the machine, the rotation is stopped by the deflectors which extend external to this downward flare, conoidal bottom end of the air stack.

The enlarged arrangement at this part of the outlet stack enables the air after its rotation is stopped to choose its own free course and make the turn with practically no motion. The air escapes through the stack vertically.

The plaintiffs in this action rely on claims 3, 4, 6, 10, 11, 18, and 19, which read as follows:

"3. In a centrifugal dust collector, the combination with a casing having a tangential inlet, a top air outlet and a bottom dust outlet, of an air stack opening to the air outlet flaring downwardly and outwardly; and whirl interrupting deflectors associated with said stack arranged below its lower end, and in radius extending to the edge thereof; the radially outer edges of said deflectors being unconfined to admit lateral passage of air therebetween.

"4. In a centrifugal dust collector, the combination with a casing having a tangential inlet, a top air outlet and a bottom dust outlet, of an air stack opening to the air outlet, flaring downwardly and outwardly; and whirl interrupting deflectors associated with said stack extending below and beyond the lower edge of said stack, said deflectors having their outer edges unconfined to admit air laterally therebetween."

"6. In a dust collector, a casing providing an upper area of smaller diameter and a lower area of greater diameter, and provided with an air outlet in its top and a dust outlet in its bottom, a tangential inlet opening into the upper, smaller area of the casing, an outlet stack extending from the outlet to a point below the inlet, said stack having a conoidal enlargement at its lower end in the area of the casing of larger diameter, and deflectors for breaking up the air whirl at the lower end of the stack."

"10. In a dust collector, a conoidal casing gradually increasing in diameter from an upper area to an area therebelow, provided with an air outlet in its top, and a dust outlet adjacent the bottom, a tangential inlet opening into the upper smaller area of the casing, an outlet stack extending from the air outlet to a point below the air inlet, said stack having a conoidal enlargement in the lower larger portion of the casing area, and deflectors for breaking up the air whirl at the lower end of the stack.

"11. In a dust collector, a casing provided with an air outlet in its top and a dust outlet in its bottom portion, a tangential inlet opening to the upper area of the casing, an outlet stack extending from the outlet to a point below the inlet, said outlet stack being of uniform diameter in its upper portion, and below the plane of the inlet provided with a conoidal enlargement, and deflectors for breaking up the air whirl at the lower end of said stack."

"18. The combination with a dust collector casing providing a top air outlet, a bottom dust outlet, and a tangential inlet, of an air stack flaring downwardly and outwardly, deflectors associated with the lower end thereof to break up the air whirl to the radius of said bottom end of the stack, and a centrally located, transverse baffle below the deflectors.

"19. In a dust collector, the combination with a casing, providing an upwardly tapering upper portion having an air outlet in its head, and a bottom portion having a dust outlet therein; said casing inclosing an area wherein air may rotate; of an inlet spout for dust-laden air opening through the tapering upper portion of the casing near the smallest diameter thereof and having side walls tangentially disposed with respect to said tapering upper portion of the casing, said side walls being substantially parallel to the axis about which the air within the casing rotates."

Each and every one of these claims reads on the defendant's construction, and its dust collector is substantially a copy of the plaintiffs' commercial construction under the patent in suit.

The objects of the invention were to separate dust to a commercial degree with a dust collector of smaller cubical contents than had theretofore been used for the same capacity, and to build a larger successful commercial machine than the plaintiffs had ever been able to build before, and the saving in money was by reduction of power required, caused by eliminating all centrifugal resistance.

The patent in suit teaches the use of centrifugal force for separating the dust in the machine, and, after the dust has been separated from the air to a sufficient degree, the immediate stopping of the rotation of the air, which stops the centrifugal force and in consequence eliminates any centrifugal resistance.

The advantages derived from the invention of the patent in suit are:

(1) By practically eliminating back pressure, high-power efficiency is secured, and there is an enormous saving in the power required to separate the dust and air.

(2) A high degree of dust and air separation at high-power efficiency.

(3) Relatively small dust collectors required for any given dust-handling capacity, with high-power efficiency and high degree of dust and air separation.

(4) Larger capacity collectors than the prior art had shown to be possible.

These advantages are brought about by the co-operative action of the following factors or structural peculiarities:

(1) A biconoidal body with an upper tapering section and a lower tapering section.

(2) A rectangular, relatively narrow inlet entering the smallest end of the upper tapering section in a straight line and tangentially, close to the collector axis, whereby a relatively thin stream of dust-laden air is projected into the upper tapering section as close as possible to the vertical axis about which the air within the casing rotates; allowance, of course, being made for the centrally suspended air outlet stack or guard.

(3) An air outlet stack or guard flaring outwardly and downwardly from the outlet to a point below the inlet.

(4) Deflectors associated with the air outlet stack—arranged below, and extending radially beyond the flare thereof, and having their outer edges open or unconfined—to break up the air whirl and thereby contribute to the reduction of back pressure and render the entire stack all effective for escape of air.

The elimination of any of these four factors will affect the results obtained from the dust collector, as the best result is produced by all working together. If the best results are not needed or expected, some of the factors may be modified or entirely eliminated, but it will be at some sacrifice in result.

Defendant offered in evidence twenty-three prior art patents, but in none of these patents are found the four factors associated together, nor in fact any two of them.

It seems to me that the Allington patent, No. 772,689, issued October 18, 1904, on an application filed March 14, 1904, is the closest to the construction of the patent in suit of any of the prior art introduced by the defendant, but that patent discloses a straight cylindrical upper section, not conoidal, an outlet stack that does not taper, an inlet that does not open into the tapering upper section, and deflectors closed circumferentially. It is a poor dust separator of lower power efficiency than the collector of the patent in suit.

The Miller patent, No. 801,806, discloses deflectors wholly within the outlet stack, and was beaten in interference with the patent in suit.

Defendant contends that claim 19 is anticipated by patent to Marshall, No. 550,-796, but I cannot agree with this contention as the patent to Marshall is for a dust-collecting system and not a dust collector.

The system consists in the employment of a fan of peculiar construction, with ordinary branch and main pipes from the machine.

The construction of the fan is described by the patentee Marshall as follows:

"The fan is so constructed, * * * that when the inlet is fully open the larger proportion of the air escapes from the fan practically freed from dust and is delivered back into the factory, while the whole of the dust and waste is delivered, with a small proportion of the air current, into the small dust collector *17*."

The result of the use of the fan is that only a part of the air taken in on the suction side of the fan must be delivered through the discharge pipe to the destination, and therefore the discharge pipe is smaller and less air has to be blown out of a factory.

The patentee in the specifications contends that a large saving of power, space, and cost could be made if each large dust-producing machine in the factory could be supplied practically with its own small individual fan and system of pipes, and, where small dust-producing machines are employed, each set be supplied with its individual fan and piping system so that, when any machine is idle, it may be cut off.

The defendant makes a like contention as to patent to Morse, No. 452,554, but this contention cannot be sustained. The principal object of the invention is stated in the specification of the patent to be "to construct a machine of this kind whereby two grades of dust slightly different in size or specific gravity are discharged separately," and that patent is clearly distinguished from the patent in suit, in that in the Morse patent the tangential inlet, which gives rotation, is located at the larger diameter of the separating chamber, and the air must pass from the periphery toward the axis of rotation against centrifugal force in order to arrive into the zone of the two outlets where it can escape, and there are no deflectors for stopping the rotation of the air.

Defendant makes a point of the fact that neither of these patents was cited by the Examiner and assumes that they were overlooked; but a more reasonable assumption might be that the Examiner viewed them as I do, and did not consider them proper references.

Defendant contends that each of the remaining claims of the patent in suit are invalid or mere aggregations, but this contention by defendant was not sustained, because in each of the patents of the prior art offered by defendant, not hereinbefore referred to, the following enumerated factor or factors or structural peculiarities which in the patent in suit, acting in co-operation, bring about the advantages of the patent in suit, are not found:

Swiss patent, No. 27,064. Cylindrical upper section is not conoidal, tangential inlet is not straight, and the end walls do not extend either below or beyond the rim of the lower flare in the lower end of the air outlet pipe.

Allington & Curtis patent, No. 394,240. No flaring stack, and no deflectors to arrest the whirl of air.

McVeety patent, No. 775,664. Body not conoidal; no outlet stack or deflectors, as shown in the patent in suit.

Lee patent, No. 458,773. Cylindrical upper section is not conoidal, outlet not tapered, and there are no deflectors for stopping air whirl.

Mundy patent, No. 398,788. Cylindrical upper section is not conoidal. What might be called a deflector $C$ is located wholly within the area of the outlet, and the deflector stack does not flare downwardly and outwardly.

Stratton patent, No. 375,463, is a steam separator, not a dust collector.

Farrar patent, No. 435,057. Tangential inlet enters the lower large end of the upper tapering part where the diameter is greatest, instead of at the top, and the long tubular guard for the escape of the air is straight, not cylindrical.

Allington patent, No. 755,430, and Bittinger patent, No. 446,053. Cylindrical upper sections not conoidal, and they have no deflectors to break up air whirl.

Martin patent, No. 431,951. Upper part of this collector, where the tangential inlet enters, is cylindrical and not tapering, and there are no deflectors extending beyond the outlet stack or stopping the rotation of air.

Morse patent, No. 798,437. Cylindrical upper section is not conoidal, no downwardly projecting outlet stack, and the so-called deflectors do not break up air whirl.

Morse patent, No. 958,666. Cylindrical upper section not conoidal, outlet stack not tapered, and does not extend below outlet nor into enlarged area of the body, and the so-called deflectors do not break up air whirl.

Charlton patent, No. 590,033. Polygnal shaped collector, straight cylindrical air outlet, and no deflectors for breaking up air whirl.

Ash patent, No. 408,787. Cylindrical upper section not conoidal, air inlet does not taper downwardly and outwardly, and has no deflectors, because that is not the function of the lips, $h$ and $k$.

Miller patents, Nos. 854,516 and 838,879. No deflectors for breaking up air whirl.

Fletcher patent, No. 505,977. Cylindrical upper section not conoidal. Outlet stack is straight instead of flaring outwardly and downwardly.

Allington & Curtis patent, No. 389,786.
25 F.(2d)—10

No conoidal upper section, and no deflectors for breaking up air whirl.

Morse patent, No. 404,217. Tangential outlet at the upper end of an inverted conoidal body, with the air outlet at the bottom end. The large end being at the top, the air must pass in a downwardly tapering spiral, much farther away from the axis of rotation than if it entered at the smaller lower part. [1] From what I have said before with reference to the co-operation of the principal elements in accomplishing the result, it is apparent that, even if all the elements of the patent were old and well known, which they were not, the combination and arrangement of them produced a new and beneficial result never attained before, and this constitutes invention and not a mere aggregation. Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177.

Finding as I have that Allington patent No. 772,689 is the closest reference in the prior art, it does not seem necessary to further analyze the remaining patents specifically, although I have carefully examined each of the patents in the light of the contentions of the defendant's brief, and find that, while undoubtedly some of the elements of the patent in suit are found in most, if not all, of the prior art patents, yet in none of those patents are found all of the elements of the patent in suit, nor equivalents thereof functioning in the same manner and producing the same results, but that the patent in suit represents invention and a distinct advance in the art.

[2] There is no proof of any knowledge on the part of the plaintiffs, or either of them, that the defendant's structures infringed until late in September, 1927, and the bill of complaint was filed December 1, 1927. Clearly there was no laches in waiting two months before commencing an action.

The burden was on the defendant to establish laches, which it has failed to do, as inference and innuendo cannot overcome the weight of positive testimony.

The proof of notice is sufficient, and there seems to be no question about the use after notice, as defendant allowed inspection on condition that it be made after the system was shut down for the day.

[3] The patent in suit, particularly claims 3, 4, 6, 10, 11, 18, and 19, is valid and infringed, and the plaintiffs may have a decree against the defendant, with costs and an injunction, and with the usual reference.